Erik J. Carlson (CA Bar No. 265167)
E-mail: erik.carlson@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

Natalie C. Clayton (*pro hac vice* forthcoming)
E-mail: natalie.clayton@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

***Attorneys for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Consumer Care, Inc.***

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NUTRAMAX LABORATORIES, INC. AND NUTRAMAX LABORATORIES CONSUMER CARE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>NEVISS LLC,<br><br>Defendant. | Case No. 2:26-cv-12437<br><br>**DEMAND FOR JURY TRIAL** |

# COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Nutramax Laboratories, Inc. ("Nutramax Labs") and Nutramax Laboratories Consumer Care, Inc. ("Nutramax Consumer Care") (collectively, "Nutramax" or "Plaintiffs"), through their undersigned counsel, bring this action against Defendant Neviss LLC ("Neviss" or "Defendant"). In support of this Complaint, Nutramax alleges as follows:

## NATURE OF THE ACTION

1. Nutramax researches, develops, and sells high-quality, innovative health supplements. One of Nutramax's well-regarded consumer health supplement products is Avmacol®. The Avmacol® Extra Strength formulation contains a unique synergistic combination of ingredients, including a sulforaphane precursor, a glucosidase enzyme, a glucosidase enzyme cofactor, and a glucan, that supports the body's natural detoxification process and cellular health.

2. Nutramax has numerous patents protecting its inventions related to its health supplement products, including Avmacol®. For example, Nutramax Labs is the rightful owner of United States Patent Nos. 10,583,178 ("the '178 Patent," Exhibit 1) and 11,654,186 ("the '186 Patent," Exhibit 2) (collectively, "the Asserted Patents"), which are generally directed to orally administrable compositions including synergistic combinations of a sulforaphane precursor, a glucosidase enzyme, a glucosidase enzyme cofactor, and a glucan, as well as synergistic combinations of sulforaphane or a derivative thereof, and a glucan. Nutramax Consumer Care is a wholly owned subsidiary of Nutramax Labs and distributes Avmacol® in the United States as the exclusive licensee of the '178 and '186 Patents in the field of human health supplements.

3. Neviss is a health supplement company that sells the Neviss Kids 4+ & Adults Liposomal Sulforaphane from Broccoli Sprout Extract Superfood Gummies ("Neviss Sulforaphane Supplement" or "Accused Product"). The Neviss Sulforaphane Supplement contains the synergistic combination of

ingredients claimed in the Asserted Patents.

4. Neviss is not authorized, and has never been authorized, to use the Asserted Patents. Thus, Neviss has infringed and/or continues to infringe, directly and/or indirectly, the Asserted Patents by making, using, selling, offering to sell, and/or importing the Accused Product, and this Complaint is necessary to remedy such infringing conduct. Nutramax accordingly files this Complaint seeking a judgment of and relief for Neviss's infringement of the Asserted Patents.

## THE PARTIES

5. Plaintiff Nutramax Labs is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Labs maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

6. Plaintiff Nutramax Consumer Care is a corporation organized and existing under the laws of the State of South Carolina. Nutramax Consumer Care maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.

7. Defendant Neviss is a California limited liability company with its principal place of business at 1299 W State Street, Ontario, California 91762. Neviss also maintains a place of business at 1518 Prospect Avenue, Apt. 107, San Gabriel, California 91776. Neviss advertises, promotes, offers for sale, and sells the Accused Product throughout the United States, including in this District.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, *et seq.*

9. This Court has personal jurisdiction over Neviss because it is organized under the laws of California and its principal place of business is in this District.

10. Neviss regularly conducts business in California, including in this District, and purposefully avails itself of the privileges of conducting business in California and this District.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because Neviss resides in this District based on its state of organization and principal place of business.

## FACTUAL BACKGROUND

12. Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely trusted brands, including but not limited to its Avmacol® product line.

13. Nutramax's health supplement products are utilized to help support joint health, environmental detoxification, and other uses.

14. Nutramax's health supplement products are widely regarded as the gold standard in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

15. In fact, the active compounds used in its health supplement products adhere to strict purity and quality standards, which differentiates Nutramax's products from many other products on the market that use inferior ingredients from unverified suppliers. The specific compounds and ingredients used in Nutramax's health supplement products have been researched and tested, and Nutramax has taken substantial steps to ensure that its products are of the highest quality. Using a quality management system, Nutramax maintains strict control over each step of the manufacturing process.

16. Over the years, Nutramax has spent millions of dollars researching and developing its innovative health supplement products, and devotes

significant financial resources each year to marketing as well.

17. In addition, Nutramax's extensive investment in research and development of innovative health supplement products has led to significant innovation in the health supplement industry. This innovation has been recognized by the U.S. Patent and Trademark Office, which has issued numerous patents to Nutramax that cover various health supplement products.

18. Among Nutramax's patent-protected products is its Avmacol® line of products. Nutramax's Avmacol® Extra Strength products contain a proprietary combination of sulforaphane compounds and glucan-containing extracts that have been scientifically researched and shown to provide synergistic health benefits.

19. For example, Avmacol® Extra Strength contains a synergistic combination of broccoli seed and sprout extract (ERS92®), containing sulforaphane glucosinolate (glucoraphanin), which is a sulforaphane precursor; myrosinase enzyme (Myrosimax®), which is a glucosidase enzyme capable of converting the sulforaphane precursor to sulforaphane; vitamin C/ascorbic acid, which is a glucosidase enzyme cofactor; and beta-glucan (yeast extract), which is a glucan/β-glucan.

20. The Avmacol® brand has been selected for use in more sulforaphane human clinical trials than any other sulforaphane-producing supplement in the marketplace. Studies[1] show that amounts and ratios of ingredients present in Avmacol® are synergistically effective in reducing oxidative stress and inflammation.

---

[1] Examples include Bauman et al., *Randomized Crossover Trial Evaluating Detoxification of Tobacco Carcinogens by Broccoli Seed and Sprout Extract in Current Smokers*, 14(9) Cancers 2129 (2022); Wang et al., *Health Effects (Renal) of Extra Strength Avmacol (HEROES) Study: Results from the Pharmacokinetic Phase of a Randomized Double-Blind Placebo-Controlled Trial: SA-PO263*, 34(11S) J. Am. Soc. Nephrology 795 (2023).

## OVERVIEW OF THE ASSERTED PATENTS

**A. The ’178 Patent**

21. United States Patent No. 10,583,178 is entitled “Compositions Comprising Sulforaphane or a Sulforaphane Precursor and a Mushroom Extract or Powder” and names Brian Cornblatt, Grace Cornblatt, Anton Bzhelyansky, and Robert Henderson as the inventors. The ’178 Patent was duly and legally issued on March 10, 2020. A true and correct copy of the ’178 Patent is attached as Exhibit 1.

22. Nutramax Labs owns, by assignment, all right, title, and interest in and to the ’178 Patent, including the right to sue and recover for all past, current, and future infringement.

23. Pursuant to a written agreement between Nutramax Labs and Nutramax Consumer Care, Nutramax Consumer Care holds the exclusive rights to make, use, offer for sale, and sell in the United States, and to import into the United States, human supplement products practicing the ’178 Patent, as well as the exclusive rights to enforce the ’178 Patent jointly with Nutramax Labs and to collect damages for any past, current, and future infringement.

**B. The ’186 Patent**

24. United States Patent No. 11,654,186 is entitled “Compositions Comprising Sulforaphane or a Sulforaphane Precursor and a Mushroom Extract or Powder” and names Brian Cornblatt, Grace Cornblatt, Anton Bzhelyansky, and Robert Henderson as the inventors. The ’186 Patent was duly and legally issued on May 23, 2023. A true and correct copy of the ’186 Patent is attached as Exhibit 2.

25. Nutramax Labs owns, by assignment, all right, title, and interest in and to the ’186 Patent, including the right to sue and recover for all past, current, and future infringement.

26. Pursuant to a written agreement between Nutramax Labs and

Nutramax Consumer Care, Nutramax Consumer Care holds the exclusive rights to make, use, offer for sale, and sell in the United States, and to import into the United States, human supplement products practicing the '186 Patent, as well as the exclusive rights to enforce the '186 Patent jointly with Nutramax Labs and to collect damages for any past, current, and future infringement.

## NEVISS'S INFRINGING PRODUCT AND CONDUCT

27. Neviss has made, used, imported, sold, and/or offered for sale in the United States, and/or continues to make, use, import, sell, and/or offer for sale in the United States—and/or has induced and/or continues to induce others to make, use, import, sell, and/or offer for sale in the United States—the Neviss Kids 4+ & Adults Liposomal Sulforaphane from Broccoli Sprout Extract Superfood Gummies (the "Neviss Sulforaphane Supplement" or "Accused Product"). For example, Neviss has offered and/or continues to offer the Neviss Sulforaphane Supplement for sale on Amazon.com, in both 60-count and 120-count varieties.[2]

28. The Neviss Sulforaphane Supplement contains a synergistic combination of glucosinolate (broccoli sprout extract with 1.0% glucoraphanin), which is a sulforaphane precursor; myrosinase enzyme, which is a glucosidase enzyme capable of converting the sulforaphane precursor to sulforaphane; vitamin C/ascorbic acid, which is a glucosidase enzyme cofactor; beta glucan from yeast extract, which is a glucan/β-glucan; and liposomal sulforaphane (broccoli sprout extract, 0.4% sulforaphane), which is a sulforaphane.

29. The recommended dosage of the Neviss Sulforaphane Supplement is one gummy per day for children ages 4 and older and two gummies per day for adults. Each gummy contains 65 mg of glucosinolate (sulforaphane precursor)

[2] *Available at* https://www.amazon.com/dp/B0H5HTW7R8?ref=clp_cat_related_p_3&th=1 (60 count); *see also* https://www.amazon.com/dp/B0G2WPZFSC?ref=clp_cat_related_p_3&th=1 (120 count).

and 50 mg of beta glucan, yielding a ratio of approximately 1.3:1 sulforaphane precursor to glucan per serving. For the adult serving of two gummies, the amounts are 130 mg of glucosinolate and 100 mg of beta glucan. Each gummy further contains 100 mg of liposomal sulforaphane (200 mg for adult serving), yielding a ratio of approximately 2:1 sulforaphane to glucan.

30. On information and belief, the combination of glucosinolate (a sulforaphane precursor), myrosinase enzyme (a glucosidase enzyme), vitamin C/ascorbic acid (a glucosidase enzyme cofactor), and beta glucan from yeast extract (a β-glucan) in the Neviss Sulforaphane Supplement is synergistically effective, as Neviss itself markets and advertises the product as having synergistic properties.

31. For example, Neviss promotes the Accused Product as a "stabilized & dual-activated liposomal sulforaphane system" and contrasts it with "ordinary broccoli supplements," explaining that its "dual-activation system (glucoraphanin+plant-based myrosinase+white mustard seed)…allows sulforaphane to be generated active inside the body," thereby yielding active sulforaphane that neither ingredient provides on its own. Neviss also emphasizes that the Neviss Sulforaphane Supplement is "[e]nhanced with liposomal delivery for improved stability, absorption, and gentler digestion…." Further, Neviss advertises that it "[a]dd[s] Beta-Glucans" to "help the body's natural defender cells work more efficiently," representing that glucan enhances the effect of the formulation.

32. On August 17, 2026, Nutramax sent correspondence to Neviss, informing Neviss that it infringes the '178 and '186 Patents by manufacturing, selling, distributing, and/or marketing in the United States the Accused Product.[3]

---

[3] Nutramax sent the August 17, 2026 and September 17, 2026 correspondence by mail and e-mail to the contact information Neviss identifies on its website: 1518 Prospect Ave, Apt. 107, San Gabriel, California 91776 and info@nevisshealth.com. *Available at* https://www.nevisshealth.com/contact.

Nutramax requested that Neviss immediately cease and desist all infringing activity. A copy of this letter is attached as Exhibit 5.

33. On September 17, 2026, counsel for Nutramax sent follow-up correspondence to Neviss, again demanding that Neviss immediately cease and desist from all infringing activities. The correspondence again included the patents and additional exemplary claim charts detailing Neviss's ongoing infringement of the '178 and '186 Patents through the manufacture, sale, distribution, and/or marketing of the Accused Product. Nutramax's counsel requested a response by September 24, 2026. A copy of this letter is attached as Exhibit 6.

34. Neviss has not responded to either letter. Neviss's failure to respond, combined with its continued manufacture, sale, distribution, and/or marketing of the Accused Product, constitutes evidence of willful infringement.

35. Rather than respond to Nutramax's letters, Neviss altered its Amazon.com product listings for the Accused Product to give the appearance that the Accused Product no longer infringes certain claims of the Asserted Patents. For example, after receiving Nutramax's letters, Neviss replaced the photograph of the ingredient label in its Amazon.com listings with an image that omits reference to myrosinase enzymes and dual-activation efficiency sulforaphane. Neviss also removed its prior statements that the Accused Product uses a "dual-activation system (glucoraphanin+plant-based myrosinase+white mustard seed) that allows sulforaphane to be generated active inside the body." An annotated comparison of the ingredient label image and product description in Neviss's Amazon.com listing before and after Neviss received Nutramax's letters is shown below:

<table>
<tr><th>Original Listing (Sept. 8, 2026)</th><th>Altered Listing (Oct. 6, 2026)</th></tr>
<tr><td>


</td><td>


</td></tr>
<tr><td>
<ul>
<li>STABILIZED & DUAL-ACTIVATED LIPOSOMAL SULFORAPHANE SYSTEM: Unlike ordinary broccoli supplements, our sulforaphane gummies use a stabilized dual-activation system (glucoraphanin+plant-based myrosinase+white mustard seed) that allows sulforaphane to be generated active inside the body. Enhanced with liposomal delivery for improved stability, absorption, and gentler digestion for daily use, easier than raw broccoli extracts. Green gummy bears have a long shelf life, no refrigeration required</li>
<li>DESIGNED FOR FAMILY-SUPERFOOD & BRAIN SUPPORT: To make this broccoli gummies suitable for daily family use, we added a gentle superfood blend (moringa, spirulina, kale, spinach, blueberry, carrot) to provide natural phytonutrients and trace minerals. SOD, Vitamins C&E, Selenium, Zinc help growing kids' brain & cognitive function, immune balance and adults support antioxidant defense, healthy aging, cellular renewal for growing kids and busy adults looking for easy daily greens support</li>
<li>DAILY CELL & IMMUNE DEFENSE SUPPORT: Liposomal sulforaphane gummies is designed around one clear role to support the body's natural cellular and immune defense through sulforaphane, while providing gentle nutritional support for the whole family. Sulforaphane is known for activating the body's internal defense signaling, while supporting the way cells respond to everyday stress from food, environment, and lifestyle. Add Beta-Glucans to help the body's natural defender cells work more efficiently</li>
</ul>
</td><td>
<ul>
<li>CONCENTRATED ACTIVE LIPOSOMAL SULFORAPHANE: Each serving delivers 100 mg of active sulforaphane. Research suggests sulforaphane may support Nrf2 "defense switch", helping activate the body's natural cellular defense systems. It may support brain cell function, cognition, focus, and daily immune health. Liposomal delivery helps enhance stability and absorption, offering a gentle, easy-to-digest gummy for kids and adults. Ideal for everyday phytonutrient support. No more broccoli battles!</li>
<li>DESIGNED FOR FAMILY-SUPERFOOD & BRAIN SUPPORT: To make this broccoli gummies suitable for daily family use, we added a gentle superfood blend (moringa, spirulina, kale, spinach, blueberry, carrot) to provide natural phytonutrients and trace minerals. SOD, Vitamins C&E, Selenium, Zinc help growing kids' brain & cognitive function, immune balance and adults support antioxidant defense, healthy aging, cellular renewal for growing kids and busy adults looking for easy daily greens support</li>
<li>DAILY CELL & IMMUNE DEFENSE SUPPORT: Liposomal sulforaphane gummies is designed around one clear role to support the body's natural cellular and immune defense through sulforaphane, while providing gentle nutritional support for the whole family. Sulforaphane is known for activating the body's internal defense signaling, while supporting the way cells respond to everyday stress from food, environment, and lifestyle. Add Beta-Glucans to help the body's natural defender cells work more efficiently</li>
</ul>
</td></tr>
</table>

36. Neviss's changes to its Amazon.com listings did not change the Accused Product itself. On information and belief, Neviss continues to make, sell, and distribute the same Accused Product, with the same formulation, that it sold before receiving Nutramax's letters. Indeed, an exemplary Accused Product ordered through Neviss's altered Amazon.com listing on October 1, 2026, and

delivered on October 3, 2026, bears a label that continues to identify a "Dual Activator Sulforaphane Blend" of "Myrosinase Enzymes" and "White Mustard (Sinapis alba) Seed Powder," as pictured and annotated below. Neviss's alteration of its listings—without any change to the Accused Product—demonstrates that Neviss was aware of the Asserted Patents and of its infringement, and sought to conceal its infringement rather than cease it.




37. Moreover, Neviss altered only the Amazon.com listings that Nutramax identified in its letters. Neviss continues to offer the Accused Product for sale through at least one other Amazon.com listing that was not cited in Nutramax's letters, which offers the Accused Product in a bundle with another Neviss product.[4] That listing, reproduced and annotated below, still displays the

[4] *Available at* https://www.amazon.com/dp/B0G8FGFXB9?plpRedirect=mhFallback&ref=clp_hp_h_pc (last visited Oct. 6, 2026).

original ingredient label image identifying myrosinase enzyme as an ingredient of the Accused Product and highlighting "Dual-Activation Efficiency Sulforaphane." Neviss's selective alteration of only those listings identified in Nutramax's letters further confirms that Neviss's changes were made to obscure




rather than cease its infringement.

## GENERAL ALLEGATIONS RELATED TO INFRINGEMENT

38. Neviss has infringed and/or continues to infringe, directly and/or indirectly, at least one claim of each of the Asserted Patents by engaging in acts constituting infringement under 35 U.S.C. §§ 271(a), (b), (c), and/or (f), including but not limited to one or more of making, using, selling, offering for sale, importing, exporting, and/or inducing, and/or contributing to infringement by others, the Accused Product in this District and elsewhere in the United States.

39. As a result of Neviss's infringement, Nutramax has suffered and/or will continue to suffer harm in the form of reasonable royalties and/or lost profits. Nutramax seeks damages for infringing acts beginning as early as six years before the filing of this Complaint.

40. Nutramax also seeks an injunction prohibiting further acts of infringement. Each of Neviss's acts of infringement has caused and/or will continue to cause Nutramax irreparable harm for which there is no adequate remedy at law. Such injunctive relief would not disserve the public interest, and is warranted when considering the balance of the equities.

41. Upon information and belief, Neviss had actual or constructive knowledge and notice of infringement as to each of the Asserted Patents. Nutramax marks the Avmacol® Extra Strength products with one or more of the Asserted Patent numbers. Further, Neviss had actual knowledge of the '178 and '186 Patents at least as of August 17, 2026, when Nutramax sent a cease-and-desist letter to Neviss informing it of its infringement of the Asserted Patents. That Neviss had, and continues to have, knowledge of the Asserted Patents is further evident from the September 17, 2026 follow-up letter sent by counsel for Nutramax, which again identified the '178 and '186 Patents and attached copies of the patents and exemplary claim charts. Despite receiving both letters, Neviss has not responded and has continued to sell the Accused Product.

42. Neviss's infringement of the Asserted Patents has been, and/or continues to be, willful because Neviss has committed and/or continues to commit acts of infringement even though Neviss knew or should have known that its actions constitute an unjustifiably high risk of infringement. Specifically, Neviss received not one but two cease-and-desist letters identifying the Asserted Patents and detailing Neviss's infringement thereof, yet Neviss failed to respond to either letter—instead choosing to alter its product listings to obscure infringement—and continued to manufacture, sell, and market the Accused Product. Neviss's deliberate and continued infringement after receiving actual notice of the Asserted Patents is evidence of willful infringement.

43. Neviss's infringement of the Asserted Patents has been, and/or continues to be, without permission, consent, authorization or license.

## COUNT I: INFRINGEMENT OF THE ’178 PATENT

44. Nutramax incorporates the allegations of all the foregoing paragraphs as if fully restated herein.

45. Neviss has infringed, contributed to the infringement of, and/or induced infringement—and/or continues to infringe, contribute to the infringement of, and/or induce infringement—of the ’178 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Product that is covered by one or more claims of the ’178 Patent.

46. The Accused Product directly infringes, literally and/or through the doctrine of equivalents, one or more claims of the ’178 Patent under 35 U.S.C. § 271(a). Neviss has made, used, sold, offered for sale, and/or imported into this District and elsewhere in the United States—and/or continues to make, use, sell, offer for sale, and/or import in this District and elsewhere in the United States—the Accused Product and thus has directly infringed and/or continues to directly infringe claims of the ’178 Patent.

47. As illustrated in Exhibit 3, which is incorporated here by reference, the Accused Product infringes at least claims 1, 5, 6, 14, 17, 18, 22, and 25 of the ’178 Patent because it includes the claimed synergistic combination of ingredients recited in the claims.

48. Neviss also has indirectly infringed and/or continues to indirectly infringe claims of the ’178 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Neviss’s distributors, retailers, and customers, in this District and elsewhere in the United States. For example, Neviss’s retailers have directly infringed and/or continue to directly infringe through their sale of the Accused Product, and its customers have directly infringed and/or continue to directly infringe through use of the Accused Product. Neviss has induced and/or continues to induce this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the

Accused Product. Neviss has performed and/or continues to perform these affirmative acts with knowledge of the ’178 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’178 Patent.

49. Neviss also has indirectly infringed and/or continues to indirectly infringe claims of the ’178 Patent as provided in 35 U.S.C. § 271(c), by contributing to the direct infringement committed by others, such as customers, in this District and elsewhere in the United States. Neviss’s affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Product, and causing the Accused Product to be manufactured, used, sold, and offered for sale, have contributed to and/or continue to contribute to Neviss’s retailers’ and customers’ use of the Accused Product, such that the ’178 Patent has been and/or continues to be directly infringed. The Accused Product is material to the invention of the ’178 Patent and is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by Neviss to be especially made or especially adapted for use in infringement of the ’178 Patent. Neviss has performed and/or continues to perform these affirmative acts with knowledge of the ’178 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’178 Patent.

50. Neviss has been aware of the ’178 Patent and its infringement thereof at least as of August 17, 2026.

51. Neviss’s acts of infringement have caused damage to Nutramax. Nutramax is entitled to recover from Neviss the damages sustained by Nutramax as a result of its wrongful acts in an amount subject to proof at trial.

52. Nutramax provides the foregoing explanation of infringement with regard to exemplary claims compared to the exemplary Accused Product and exemplary functionality. Nutramax reserves the right to present additional or alternative explanations of infringement for the claims and functionalities and for other claims and functionalities of the Accused Product.

**COUNT II: INFRINGEMENT OF THE '186 PATENT**

53. Nutramax incorporates the allegations of all the foregoing paragraphs as if fully restated herein.

54. Neviss has infringed, contributed to the infringement of, and/or induced infringement—and/or continues to infringe, contribute to the infringement of, and/or induce infringement—of the '186 Patent by making, using, selling, offering for sale, and/or importing into the United States the Accused Product that is covered by one or more claims of the '186 Patent.

55. The Accused Product directly infringes, literally and/or through the doctrine of equivalents, one or more claims of the '186 Patent under 35 U.S.C. § 271(a). Neviss has made, used, sold, offered for sale, and/or imported into this District and elsewhere in the United States—and/or continues to make, use, sell, offer for sale, and/or import in this District and elsewhere in the United States—the Accused Product and thus has directly infringed and/or continues to directly infringe claims of the '186 Patent.

56. As illustrated in Exhibit 4, which is incorporated here by reference, the Accused Product infringes at least claims 1, 5, 6, 11, 15, 16, 19, 20, 25, and 29 of the '186 Patent because it includes the claimed synergistic combination of ingredients recited in the claims.

57. Neviss also has indirectly infringed and/or continues to indirectly infringe claims of the '186 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as Neviss's distributors, retailers, and customers, in this District and elsewhere in the United States. For example, Neviss's retailers have directly infringed and/or continue to directly infringe through their sale of the Accused Product, and its customers have directly infringed and/or continue to directly infringe through use of the Accused Product. Neviss has induced and/or continues to induce this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the

Accused Product. Neviss has performed and/or continues to perform these affirmative acts with knowledge of the ’186 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’186 Patent.

58. Neviss also has indirectly infringed and/or continues to indirectly infringe claims of the ’186 Patent as provided in 35 U.S.C. § 271(c), by contributing to direct infringement committed by others, such as customers, in this District and elsewhere in the United States. Neviss’s affirmative acts of selling and offering to sell, in this District and elsewhere in the United States, the Accused Product, and causing the Accused Product to be manufactured, used, sold, and offered for sale, have contributed to and/or continue to contribute to Neviss’s retailers’ and customers’ use of the Accused Product, such that the ’186 Patent has been and/or continues to be directly infringed. The Accused Product is material to the invention of the ’186 Patent and is not a staple article or commodity of commerce, has no substantial non-infringing uses, and is known by Neviss to be especially made or especially adapted for use in infringement of the ’186 Patent. Neviss has performed and/or continues to perform these affirmative acts with knowledge of the ’186 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’186 Patent.

59. Neviss has been aware of the ’186 Patent and its infringement thereof at least as of August 17, 2026.

60. Neviss’s acts of infringement have caused damage to Nutramax. Nutramax is entitled to recover from Neviss the damages sustained by Nutramax as a result of its wrongful acts in an amount subject to proof at trial.

61. Nutramax provides the foregoing explanation of infringement with regard to exemplary claims compared to the exemplary Accused Product and exemplary functionality. Nutramax reserves the right to present additional or alternative explanations of infringement for the claims and functionalities and for other claims and functionalities of the Accused Product.

**DEMAND FOR JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and Local Rule 38-1, trial by jury on all issues so triable is requested.

**PRAYER FOR RELIEF**

WHEREFORE, Nutramax asks the Court for an order granting the following relief:

A. A judgment in favor of Nutramax that Neviss has infringed, either literally and/or under the doctrine of equivalents, the ’178 and ’186 Patents;

B. An award of damages adequate to compensate Nutramax for infringement of the ’178 and ’186 Patents by Neviss, in an amount to be proven at trial, including supplemental post-verdict damages together with pre-judgment and post-judgment interest and costs, until such time as Neviss ceases its infringing conduct;

C. A judgment and order finding that Neviss’s infringement has been willful;

D. A permanent injunction prohibiting Neviss from further acts of infringement;

E. Enhanced damages for willful infringement pursuant to 35 U.S.C. § 284;

F. A judgment and order declaring that this is an exceptional case within the meaning of 35 U.S.C. § 285;

G. The costs of this action as well as reasonable attorneys’ fees provided by 35 U.S.C. § 285; and

H. All other relief, in law or equity, to which Nutramax is entitled.

DATED: October 23, 2026

/s/ *Erik J. Carlson*
Erik J. Carlson (CA Bar No. 265167)
E-mail: erik.carlson@alston.com
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100

Natalie C. Clayton (*pro hac vice* forthcoming)
E-mail: natalie.clayton@alston.com
**ALSTON & BIRD LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

***Attorneys for Plaintiffs Nutramax Laboratories, Inc. and Nutramax Laboratories Consumer Care, Inc.***